# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**DONNA KNEE**                                                                           **PLAINTIFF**

**v.**                                                               **NO.: 3:20-cv-00333-JMV**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*                                **DEFENDANT**

## FINAL JUDGMENT

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of a June 23, 2020, final decision of the Commission of the Social Security Administration (the "Commissioner") finding that the Plaintiff is not disabled. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] For the following reasons, the Commissioner's decision is affirmed.

Plaintiff lists six issues for review: (1) Whether SSA properly weighed the medical evidence; (2) Whether the decision is arbitrary and capricious; (3) Whether SSA applied the proper legal standards; (4) Whether there was substantial evidence that Plaintiff was disabled; (5) Whether SSA should have found Plaintiff had a sedentary RFC; and (6) Whether the RFC was supported by substantial evidence. *See* Pl.'s Br. at 1-2. However, as the Commissioner points out, the Court's Order on briefing in this case requires that "[e]ach contention must be supported by specific

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

reference to the portion of the federal court record relied upon," and Plaintiff's brief contains no citations to the federal court record. Def.'s Br. at 1. The Court's Order explains that "[t]he issues before the court are limited to the exact issues *properly raised* in the briefs." *Id.* (emphasis added).

In this case, Plaintiff failed to properly raise any issue in her brief. Nevertheless, the Commissioner responded to the unsupported claims identified above. In doing so, the Commissioner properly pointed out:

> The RFC is an administrative assessment based on the totality of the evidence, not just the medical evidence, and the extent to which the claimant's impairments and related symptoms affect her capacity to do work-related activities. 20 C.F.R. § 416.945(a). Only the ALJ may assess a claimant's work capacity. 20 C.F.R. § 416.946(c). An ALJ correctly considers all the evidence, not just the medical evidence, in assessing a claimant's RFC. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001); 20 C.F.R. § 416.945(a). Issues reserved to the Commissioner include whether an individual is disabled and the ultimate RFC determination. 20 C.F.R. § 416.920(c)(3). It is the ALJ's responsibility to weigh the evidence, resolve material conflicts in the evidence, and decide the case. *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988). The RFC is "granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the [ALJ's] decision or finds that the [ALJ] made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

It is equally well-established that a reviewing court may not reweigh the evidence or substitute its judgment for the ALJ's judgment even if the evidence weighs against the ALJ's determination. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

Here, the ALJ properly fulfilled his role as factfinder by weighing the medical opinion evidence, along with the rest of the evidence, in determining Plaintiff's claim. Moreover, as noted at the outset, none of Plaintiff's claims, including that the medical evidence shows she had "a less than sedentary RFC" is grounded by any evidence cited by plaintiff and appearing in the record. *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (issue waived due to inadequate briefing);

*S.E.C. v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (appealing party bears burden to provide court with essential references to record to carry its burden of proving error). Indeed, aside from references to two consultive evaluations, one by Dr. Adams and one by Dr. Pamela Buck, both at the direction of DDS and discussed below, the only reference Plaintiff even makes to her medical treatment is a scant reference to two documented June 2020 visits to Baptist memorial hospital (one for a fall and one for increased blood sugar) and another in October 2020 for low back pain with left sided sciatica.

The ALJ, on the other hand, addressed in detail the medical evidence to support his RFC, including the following substantial evidence:

> - Dr. Adams' consultative examination on January 24, 2019, demonstrated normal gait without an assistive device and no evidence of difficulty moving about. She could elevate on her heels and toes and squat all the way. She rose easily from a lying position. She exhibited normal lumbar range of motion, and negative bilateral straight leg raising in the supine and seated positions. There was no wasting, edema or tremor.
>
> - There were no sensory deficits and normal reflexes noted on Dr. Terry's examination on July 11, 2019, and exam revealed the claimant visited only for three-week follow-up regarding left humerus fracture. There was no deformity and the left hand was neurovascularly intact. Left shoulder x-ray showed adequate alignment. The impression was stable adequate alignment. (Exhibit 11F).
>
> - Emergency room records dated June 19, 2019, showed elevated blood glucose of 270 but diagnosis of type II diabetes mellitus without complication. Examination demonstrated supple neck and no muscular tenderness or spinal tenderness. She had regular heart rate and rhythm, normal heart sounds, clear lungs, normal respiratory effort. Although the claimant reported right leg pain, examination showed normal right knee range of motion and pain out of proportion to examination. She was alert and oriented. Cervical spine CT was showed only mild degenerative disc disease at C5-6 with posterior endplate spurring and no fracture or traumatic malalignment. (Exhibits 8). Consultative left wrist x-rays dated January 24, 2019, showed no acute injury, healed annulated

fractures of the ulna and radius in the distal diaphysis and no significant arthritic changes (Exhibits 4F and 12F).

- During Dr. Adams' consultative examination on January 24, 2019, the claimant reported right carpal tunnel syndrome but acknowledged no prior nerve conduction studies. . . There was no wasting, edema or tremor. She rose easily from a lying position.

- [Claimant] exhibited only mildly decreased bilateral grip strength of four out of five and normal strength in biceps, triceps, quadriceps and hamstrings. She had good manual dexterity and full range of motion of all fingers on the right and both elbows, forearms, hips, knees and ankles. Motion of the right shoulder was normal. Right wrist motion was normal. There were no sensory deficits and normal reflexes (Exhibit 3F). Emergency room visit on April 8, 2019, revealed no pain distress and the claimant was alert and oriented. There was no right wrist edema or deformity with the cast removed. She had normal reflexes and skin (Exhibits 5F, 6F, and 9F). The record reflected no additional treatment for right wrist fracture, which suggested no significant residual limitations or problems. Emergency room records dated June 19, 2019, showed left hip, femur and knee x-rays were normal. Left elbow and tibia-fibula x-rays were normal. Left forearm x-rays revealed old healed fractures involving the distal radius and ulna (Exhibits 8F and 9F).

- Dr. Buck's consultative evaluation on June 20, 2019, revealed subjective complaints of long-standing depression, but no medication for 25 years and no hospitalizations and no mental health treatment. The claimant served as the sole informant and she was polite, pleasant, cooperative and motivated. The claimant admitted she had a boyfriend since September 2018, with whom she spent the night sometimes. She exhibited socially appropriate behavior. She was alert, oriented, cooperative, pleasant, attentive and responsive with good eye contact, normal response latency, good appearance, no unusual mannerisms, and normal speech that was relevant, coherent and goal directed. She exhibited normal language skills and normal psychomotor activity. She denied anhedonia. She was able to spell "world" forward and backward. She performed serial three's without difficulty and repeated six digits forward and four digits backwards. She recalled three of three items immediately and two of three after a five-minute delay and three of three items with prompting. She had intact attention and concentration and good recent and remote memory. Her thought processes were logical and goal directed. There was no indication of circumstantial thought,

>flight of ideas, evasiveness, loosening of associations, preoccupations, obsessions, delusions, or hallucinations. She had good judgement, fair insight and estimated average intelligence (Exhibit 10F).
>
>- Dr. Buck noted the claimant seemed able to respond appropriately to co-worker and supervisors in a work environment but possibly limited engagement due to poor sustainability, able to manage finances, and able to perform routine repetitive tasks give ample time (Exhibit 10F).

Tr. at 10-24.

Regarding Dr. Buck's opinion in particular, the ALJ found it "partially persuasive in that the ability to perform routine, repetitive tasks is consistent with the objective findings," but "Dr. Buck's opinion of limitations due to poor sustainability were inconsistent with the objective evidence as the claimant was alert, oriented and had no difficulty with concentration, attention, memory or intellect." *Id.* at 22.

The ALJ also noted the examination

>[o]n July 11, 2019, by Cooper Terry, M.D., revealed no mental complaints or objective mental abnormalities (Exhibit 11F). . . that [t]he claimant reported poor relationships with her children, but also reported going to Disney World with her daughter and granddaughter. . . she said she could not write well due to inability to make a fist; however, she was able to write her name (Exhibit 10F). . . [she] asserted disability mental impairments and symptoms; however, she acknowledged she takes no medication and received no mental health treatment. . . the consultative evaluation demonstrated little objective mental abnormalities (Exhibit 10F). . . the other medical evidence of records showed essentially normal mental status.

The ALJ pointed out that

>claimant engages in activities of daily living that are inconsistent with disabling pain and functional limitations. Although the claimant takes longer, she acknowledged she takes care of her personal needs. In addition, the claimant notes she cleans the yard, cleans the house, watches television, takes short walks, does laundry, prepares light meals, goes out alone, drives, shops, pays

bills, handles finances, saving and checking account, listens to music, does crafts a couple times a week, talks on phone, occasionally goes out to eat, and goes to church. She noted she has very good ability to follow instructions, and no problem with authority figures or handling changes, (Exhibit 4E). On March 25, 2019, the claimant's mother reported the claimant lives with her, does light housework, such as dishes and laundry, short trips to grocery store with her, goes to church on Sundays and Wednesdays, watches TV and reads (Exhibit 8E). During the June 20, 2019, consultative evaluation the claimant reported she tries to walk around in the yard and picks up sticks for some exercise. She also reported she cleans her room, does laundry, washes dishes, changes her bed sheets, sweeps one room at a time, cooks a little, enjoys games on her computer, uses the internet, has her own cell phone, goes to grocery store with her mother, attends church, and keeps up with her own appointments and medicines. (Exhibit 10F). . . The claimant acknowledged she is good with money management and has a driver's license. The claimant testified she lives with her mother who is on social security. *Id.* The claimant testified she can lift a ten-pound bag of potatoes, attends church and does a little cooking.

In short, conclusory assertions by Plaintiff to the contrary, there is substantial evidence to support the RFC assigned by the ALJ and no discernable legal error prejudicial to Plaintiff.

## Conclusion

For the foregoing reasons, the Commissioner's decision is affirmed.

**SO ORDERED**, this the 15th day of March, 2022.

*/s/* Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**